# EXHIBIT A

## CONSOLIDATED ADJUSTABLE RATE NOTE

**This Note amends and restates in their entirety, and is given in substitution for,
the Notes described in Exhibit A of the New York Consolidation, Extension,
and Modification Agreement dated the same date as this Note.**

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY
INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I
MUST PAY.**

FEBRUARY 11, 2005                    NEW YORK                         NEW YORK
[Date]                              [City]                            [State]

2135 COLEMAN STREET, BROOKLYN, NEW YORK 11234
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $359,650.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is M.L. MOSKOWITZ & CO., INC. D/B/A EQUITY NOW, A NEW YORK CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.125 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on APRIL 1 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1370 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK 10019
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $2,185.27 . This amount may change. *INTEREST ONLY NOTE ADDENDUM ATTACHED HERETO AND
**(C) Monthly Payment Changes**            MADE A PART HEREOF.

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT
Page 1 of 5

Form 3520 1/01
DocMagic *e*Forms 800-649-1362
www.docmagic.com

Us3520.not.1.tem

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the   1st   day of MARCH, 2010                        , and on that day every   6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding THREE  AND 750/1000                      percentage points (   3.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125 %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   12.125 % or less than   3.750%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO  AND 000/1000                    percentage point(s) (   2.000 %) from the rate of interest I have been paying for the preceding  6   months. My interest rate will never be greater than   12.125 %.  or never less than 3.75%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                         Page 2 of 5

Form 3520 1/01
DocMagic *eF
800-649-1362
www.docmagic.com

Us3520.not.2.tem

6.    **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)  **Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.   **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                                    Page 3 of 5

Form 3520 1/01
*DocMagic eFerms* 800-649-1362
www.docmagic.com

Us3520.not.3.tem

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                                 Page 4 of 5

Form 3520 1/01
DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3520.not.4.tem

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
RONALD REGGIO                              -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

Pay to the order of

_____
without recourse.
M.L. Moskowitz & Co., Inc.
d/b/a Equity Now

By: _____
Michael L. Moskowitz, President

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family          Form 3520 1/01
Fannie Mae MODIFIED INSTRUMENT                                                DocMagic *CRUUME* 800-649-1362
                                            Page 5 of 5                          www.docmagic.com

Us3520.us5.tem

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE PROMISSORY NOTE

Property Address: 2135 COLEMAN STREET, BROOKLYN, NEW YORK 11234

**THIS INTEREST-ONLY ADDENDUM** ("ADDENDUM") is made this 11th day of FEBRUARY 2005 and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as the Addendum executed by the undersigned and payable to M.L. MOSKOWITZ & CO., INC. D/B/A EQUITY NOW, A NEW YORK CORPORATION (the "Lender").

**THIS ADDENDUM** supersedes and replaces Sections 3(A), 3(B), 4(C) and 7(A) of the Note. This Addendum does not supersede, replace or revise any other Section of the Note.

## 3. PAYMENTS
### (A)  Time and Place of Payments
During the first  120  months of the loan (the "Interest-Only Period"), I will make monthly payments in the amount sufficient to pay interest only as it accrues on the unpaid principal balance.  Thereafter, for the remaining 240  months of the loan, I will make monthly payments in an amount sufficient to repay fully the unpaid principal balance of the Note as of the end of the Interest-Only Period.

I will make my monthly payments on the  1st  day of each month. I will make my payments beginning on APRIL 1, 2005
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on MARCH 1, 2035                    , I still owe amounts under this Note, I will pay those amounts in full on that date which is called the "Maturity Date."
I will make my payments at 1370 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK 10019
                                                                or at a different place if required by the Note Holder.
### (B)  Amount of My Initial Monthly Payment
Each of my initial monthly payments will be in the amount of U. S. $1,835.71                    . This payment amount is based on the original principal balance of the Note.  I understand that the payment amount may change.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 750/1000                                      percentage point(s) (        3.750 %) to the current index for the Change Date.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date occurs.
During the Interest-Only Period, the Note Holder will determine the amount of the monthly payment that would be sufficient to pay accrued interest on the unpaid principal balance.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period.  However, if I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay the required interest at the then current interest rate on the lower principal balance.

At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal balance that I will owe in substantially equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. During the Interest-Only Period, the amount of the charge will be      2.000  % of my overdue payment of interest.  Thereafter, the amount of the charge will be        2.000  % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Addendum to Adjustable Rate Note.

X _____   2/11/05   _____
Borrower RONALD  REGGIO            Date         Borrower                    Date


_____            _____
Borrower                    Date             Borrower                    Date


_____            _____
Borrower                    Date             Borrower                    Date


INTEREST-ONLY ADDENDUM TO ADJUSTABLE  RATE PROMISSORY NOTE
©2004 DOCMAGIC, INC.
01/14/04                                    Page 2 of 2

DocMagic eForms  800-649-1362
www.docmagic.com

Alo.xti.2.tcm

# PREPAYMENT RIDER TO NOTE

**BORROWERS:**   Ronald Reggio

**LENDER:**   M.L. MOSKOWITZ & CO., INC. d/b/a EQUITY NOW

**PREMISES:**   2135 Coleman Street, Brooklyn, NY 11234

In the event of a conflict between the terms of this Rider and the printed form of the Note, the terms of this Rider shall prevail.

Subject to the Prepayment penalty provided below, I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." A "full Prepayment" is the prepayment of the entire unpaid Principal due under the Note. A payment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under the note.

If, within the one years period beginning with the date the borrower executes the Note (the "Penalty Period"), Borrower makes a full pre-payment, or partial pre-payment in any twelve month period that exceeds 20% of the original principal loan amount, borrower will pay a pre-payment charge as consideration for the Note Holder's acceptance of such pre-payment. The pre-payment charge will equal the amount of interest that would accrue during a six month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the pre-payment, unless otherwise prohibited by applicable law or regulation. No pre-payment charge will be assessed for any pre-payment occurring after the Penalty Period. Not withstanding the foregoing, in the event of a full pre-payment concurrent with a bona fide sale of the property to an unrelated third party after the six months of the term of the Note, no pre-payment penalty will be assessed. On that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

The Note Holder will apply all Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Pre payment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a Partial Prepayment, there will be no Change in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my note is an Adjustable Rate Note, Partial Prepayments may reduce the amount of my monthly payment after the first interest rate Change Date following the Partial Prepayment. However, any reduction due to my Partial prepayment may be offset by am interest rate increase.

The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge. Any Prepayment charge not collected at the time the Prepayment is received shall be payable on demand. All other provisions of the Note are unchanged and remain in full force and effect.

Ronald Reggio

Dated: February 11, 2005

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2003091201791001001EEC66

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 15 |
|---|---|

| Document ID: 2003091201791001 | Document Date: 08-30-2003 | Preparation Date: 09-12-2003 |
|---|---|---|

Document Type: MORTGAGE
Document Page Count: 13

| PRESENTER: | RETURN TO: |
|---|---|
| PORT ABSTRACT INC | ML MOSKOWITZ 7 CI INC |
| 600 OLD COUNTRY ROAD-SUITE LL15 | 1370 AVENUE OF THE AMERICAS |
| AGENT FOR STEWART TITLE INSURANCE CO INC | NEW YORK, NY 10019 |
| GARDEN CITY, NY 11530 | |
| 516-227-1159 | |
| PORTABSTRACT@MSN.COM | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8541 | 26 | Entire Lot | 2135 COLEMAN STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year____ Reel ___ Page ____ or File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| RONALD REGGIO | ML MOSKOWITZ & CO INC DBA EEQUITY NOW |
| 2135 COLEMAN STREET | 1370 AVENUE OF THE AMERICAS, 6F |
| BROOKLYN, NY 11234 | NEW YORK, NY 10019 |

x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 348,000.00 | Recording Fee: $ | 102.00 |
| Taxable Mortgage Amount: | $ | 348,000.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | |
| | | | $ | 0.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 1,740.00 | $ | 0.00 |
| City (Additional): | $ | 3,480.00 | | |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 870.00 | |
| MTA: | $ | 845.00 | |
| NYCTA: | $ | 0.00 | |
| TOTAL: | $ | 6,935.00 | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    12-03-2003  09:48
City Register File No.(CRFN):
2003000484623

*John J Larusee*
*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2003091201791001001CEEE6

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 15 |
|---|---|---|
| Document ID: 2003091201791001 | Document Date: 08-30-2003 | Preparation Date: 09-12-2003 |
| Document Type: MORTGAGE | | |

**PARTIES**
**MORTGAGER/BORROWER:**
CATHERINE H. REGGIO
2135 COLEMAN STREET
BROOKLYN, NY 11234

WHEN RECORDED MAIL TO:

M.L. MOSKOWITZ & CO., INC. dba EQUITY NOW
1370 AVENUE OF AMERICAS, 6th Floor
New York, NY 10019

*[handwritten: 8864-26001]*
*[handwritten: B $8541]*
*[handwritten: L 26]*
*[handwritten: mtg tax $]*
*[handwritten: 6935.00]*

| | |
|---|---|
| Loan Number: | ▮▮▮▮▮ |
| Servicing Number: | ▮▮▮▮▮▮ |

[Space Above This Line For Recording Data]

# MORTGAGE

☒ THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

☐ THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED WITH A STRUCTURE CONTAINING SIX RESIDENTIAL UNITS OR LESS, EACH DWELLING UNIT HAVING ITS OWN COOKING FACILITIES.

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated        August 30, 2003                      , will be called the "Security Instrument."
(B) "Borrower."  RONALD REGGIO AND CATHERINE H REGGIO

*[handwritten: 2135 Coleman St, Bklyn. NY. 11234]*

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender."
        M.L. MOSKOWITZ & CO., INC. dba EQUITY NOW, A NEW YORK CORPORATION
will be called "Lender." Lender is a corporation or association which exists under the laws of    NEW YORK
                         . Lender's address is
        1370 AVENUE OF AMERICAS, 6th Floor, New York, NY  10019
(D) "Note." The note signed by Borrower and dated        August 30, 2003              , will be called the "Note."
The Note shows that I owe Lender   THREE HUNDRED FORTY EIGHT THOUSAND
        . . . AND NO/100THS        Dollars (U.S. $348,000.00          ) plus interest.
I have promised to pay this debt in monthly payments and to pay the debt in full by    October 01, 2033
(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."
(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:
(A) Pay all the amounts that I owe Lender as stated in the Note;
(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:
(A) The Property which is located at                    2135  COLEMAN STREET
                                                              (Street)
    BROOKLYN                          , New York        11234-                   . This Property is in
    [City]                                              [Zip Code]
BL:8541/26                              Kings           County. It has the following legal description:


SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.


NEW YORK - Single Family
Page 1 of 9

NYD10011 (09/22/00)

TITLE NO. 8864-26001

## SCHEDULE A

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Coleman Street distant two hundred eighty (280) feet southerly from the corner formed by the intersection of the easterly side of Coleman Street with the southerly side of Avenue T;

RUNNING THENCE easterly parallel with Avenue T, one hundred (100) feet;

THENCE southerly parallel with Coleman Street twenty (20) feet;

THENCE westerly again parallel with Avenue T and part of the distance through a party wall one hundred (100) feet to the easterly side of Coleman Street;

THENCE northerly along the easterly side of Coleman Street, twenty (20) feet to the point or place of BEGINNING.

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property";
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;
(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

COVENANTS

I promise and I agree with Lender as follows:

**1. BORROWER'S PROMISE TO PAY**
I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

**2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE**
**(A) Borrower's Obligations**
I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) if, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":
(i) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";
(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);
(iii) The estimated yearly premium for hazard or property insurance covering the Property;
(iv) The estimated yearly premium for flood insurance covering the Property (if any);
(v) The estimated yearly premium for mortgage insurance (if any); and
(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(B) Lender's Obligations**
Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these

Loan Number: ▮▮▮▮▮▮    Servicing Number: ▮▮▮▮▮▮    Date: 08/30/03

services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with my loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

**(C) Adjustments to the Funds**

Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

**3. APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes: First, to pay any prepayment charges due under the Note; Next, to pay the amounts due to Lender under Paragraph 2 above; Next, to pay interest due; Next, to pay principal due; and Last, to pay any late charges due under the Note.

**4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE**

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

NYD10013 (09/22/00)

Loan Number: ███████    Servicing Number: ███████    Date: 08/30/03

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to these delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

## 6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION

**(A) Borrower's Obligations to Occupy the Property**

Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

**(B) Borrower's Obligations to Maintain and Protect the Property**

I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

**(C) Borrower's Obligations to Fulfill Any Lease Obligations**

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**(D) Borrower's Loan Application**

If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument.

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

NYD10014 (09/22/00)

Loan Number: ████████          Servicing Number: ████████          Date:  08/30/03

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

## 9. LENDER'S RIGHT TO INSPECT THE PROPERTY
Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY
A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

## 11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
### (A) Borrower's Obligations
Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

## 12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

NYD10015 (09/22/00)

Loan Number: ██████████        Servicing Number: ██████████        Date: 08/30/03

### 13. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

### 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

### 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument.

### 17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

### 18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and
(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and
(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and
(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

### 19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER

The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

### 20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

NYD10016 (09/22/00)

| Loan Number: ▮▮▮▮▮ | Servicing Number: ▮▮▮▮▮ | Date: 08/30/03 |

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

## 21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS
Except as provided in Paragraph 17, above, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If any installment under the Note or notes, secured hereby is not paid when due, or if Borrower should be in default under any provision of this security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is know as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

## 22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT
When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. To the extent permitted by applicable law, I will be required to pay Lender a fee for the discharge and for all costs of recording the discharge in the proper official records.

## 23. MISREPRESENTATION AND NONDISCLOSURE
Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

## 24. TIME IS OF THE ESSENCE
Time is of the essence in the performance of each provision of this Security Instrument.

## 25. WAIVER OF STATUTE OF LIMITATIONS
The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

## 26. MODIFICATION
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender or lawful successors in interest.

## 27. REIMBURSEMENT
To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien discharge and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

NYD10017 (09/22/00)

Loan Number: [redacted]    Servicing Number: [redacted]    Date: 08/30/03

**28. CLERICAL ERROR**
In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**29. LOST STOLEN, DESTROYED OR MUTILATED SECURITY INSTRUMENT AND OTHER DOCUMENTS**
In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**30. ASSIGNMENT OF RENTS**
As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

**31. ATTORNEYS' FEES**
As used in this Security Instrument and the note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**32. AGREEMENTS ABOUT NEW YORK LIEN LAW**
I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

**33. RIDERS TO THIS SECURITY INSTRUMENT**
If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument.
[Check applicable box(es)]

[X] Adjustable Rate Rider        [ ] Condominium Rider                    [ ] 1-4 Family Rider
[ ] Manufactured Home Rider      [ ] Planned Unit Development Rider        [ ] Occupancy Rider
[ ] Other(s) (specify)

        BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 8 of this Security Instrument and in any rider(s) signed by me and recorded with it.

_____          _____(Seal)
                        Witness                                              -Borrower

_____          _____(Seal)
                        Witness                                              -Borrower

_____(Seal)    _____(Seal)
RONALD  REGGIO          -Borrower         CATHERINE H REGGIO          -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                                            -Borrower

NYD10018 (09/22/00)

Loan Number: ███████    Servicing Number: ███████    Date: 08/30/03

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made  August 30, 2003
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

M.L. MOSKOWITZ & CO., INC. dba EQUITY NOW, A NEW YORK CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2135  COLEMAN STREET,  BROOKLYN, NY 11234-

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of    7.990%                    . The Note provides for changes in the interest rate and the monthly payments, as follows:

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
    (A) Change Dates
    The interest rate I will pay may change on the first day of   October 01    2005
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
    (B) The Index
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
    (C) Calculation of Changes
    Before each Change Date, the Note Holder will calculate my new interest rate by adding
    FIVE AND 15/100                       percentage point(s) ( 5.150% )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3

USRI0021 (02-23-99)

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.990% or less than 7.990% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 13.990% or less than 7.990%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**

Page 2 of 3                                                                USRI0022 (02-23-99)

Loan Number: ███████   Servicing Number: ███████   Date: 08/30/03

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
RONALD   REGGIO

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)
CATHERINE H REGGIO

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3                                                    USRI0023 (02-23-99)

Loan Number: ███████    Servicing Number: ███████    Date:  08/30/03

## UNIFORM, ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
### (Within New York State)

STATE OF NEW YORK          )
County of __KINGS__          ) ss.:

On the 30th day of August  in the year 2003 before me, the undersigned, personally appeared RONALD REGGIO and CAHTERINE H. REGGIO personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of Individual taking acknowledgement

STYANAND KUMAR
PUBLIC, State Of New York
No. 6052518
fied in Queens County
Commission Expires August 6, 20

OR

SATYANAND KUMAR
NOTARY PUBLIC, State Of New York
No. 6052518
Certified in Queens County
Commission Expires August 6, 20

## UNIFORM, ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
### (Outside of New York State)

State, District of Columbia, Territory, Possession or Foreign Country
          ) ss.:

On the ____ day of _____ in the year ____ before me, the undersigned, personally appeared _____ _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _____.
(Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
Signature and Office of Individual taking acknowledgement

Page 9 of 9

NYD10019 (09/22/00)

This is a true and correct copy of the original document recorded in the Office of the City Register of New York as attested by _____ on the 23rd day of March , 2004 (not valid unless signed and dated)

Rochelle Patrico



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

2004112201692001001E980F

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

Document ID: 2004112201692001        Document Date: 10-08-2003        Preparation Date: 11-22-2004
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| AMERICAN DOCS | AMERICAN DOCS |
| 14211 YORBA STREET | 14211 YORBA STREET |
| TUSTIN, CA 92780 | TUSTIN, CA 92780 |
| 888-477-4780 | 888-477-4780 |
| lstetson@americandocs.com | lstetson@americandocs.com |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8541 | 26 | Entire Lot | 2135 COLEMAN STREET |
| | Property Type: OTHER | | | |

**CROSS REFERENCE DATA**

CRFN: 2003000484623

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| M.L. MOSKOWITZ & CO, INC | OPTION ONE MORTGAGE CORPORATION |
| 1370 AVENUE OF AMERICAS, 6TH FLOOR | 3 ADA |
| NEW YORK, NY 10019 | IRVINE, CA 92618 |

x  Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage | | | Recording Fee: $ | 42.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed        12-02-2004 17:13
City Register File No.(CRFN):
                                    2004000746585

*Annette M Hill*

*City Register Official Signature*

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| | ████████████████████ |
| | 20041122016920001001C9A8F |

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)    PAGE 2 OF 3**

Document ID: 2004112201692001        Document Date: 10-08-2003        Preparation Date: 11-22-2004
Document Type: ASSIGNMENT, MORTGAGE

PARTIES
ASSIGNOR/OLD LENDER:
DBA EQUITY NOW
1370 AVENUE OF AMERICAS, 6TH FLOOR
NEW YORK, NY 10019

*Prepared by: Option One Mortgage Corp.*
*& When Recorded Return to: Assn Dept.*
*American Document Services, Inc.*
*14211 Yorba Street*
Tustin, CA 92780
(888) 477-4780          632

Loan Number: ▉▉▉▉▉▉
Servicing Number: ▉▉▉▉▉

[Space Above This Line For Recording Data]

## ASSIGNMENT OF MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS** That
M.L. MOSKOWITZ & CO., INC. dba EQUITY NOW, A NEW YORK CORPORATION
whose address is: 1370 AVENUE OF AMERICAS, 6th Floor, New York, NY 10019
as Mortgagee under that certain MORTGAGE executed by
RONALD REGGIO AND CATHERINE H REGGIO
30       day of August                , 2003       , and recorded on the                 as mortgagor on the
       December, 2003             , In Book                   of                         3RD  day of
under filing No. ▉▉▉▉▉▉▉▉▉▉023   of the Records of  Kings                           at page            County,
State of New York, given to secure the payment of a promissory note for the sum of
THREE HUNDRED FORTY EIGHT THOUSAND                                    Dollars ($ 348,000.00            )
and interest, has endorsed said note and does hereby ASSIGN AND TRANSFER to

Option One Mortgage Corporation, a California Corporation

whose address is: 3 Ada, Irvine, CA  92618
prior assignments:
all right, title and interest in said note and all rights accrued under said Mortgage and all indebtedness secured thereby. The said
Mortgage described herein affects the premises commonly known and designated as:

### DESCRIBED ON MORTGAGE REFERRED TO HEREIN

Section
Block 7841                              Address: 2135  COLEMAN STREET,
Lot  26                                            BROOKLYN, NY  11234-
                                                    Town :

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the
secondary mortgage market.

**IN WITNESS WHEREOF** said  M.L. Moskowitz & Co., Inc. d/b/a Equity Now

has caused this instrument to be signed by its  President

and attested by its corporate seal this                    day of
              M.L. MOSKOWITZ & CO;, INC. dba EQUITY NOW, A NEW YORK CORPORATION
                                     By: _____
                                        Michael L. Moskowitz, President
_____
              [Space Below This Line For Acknowledgement]

### UNIFORM, ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
(Within New York State)

STATE OF NEW YORK          )
County of ____New York____ ) ss.:

On the 8 day of  October  in the year  2003  before me, the undersigned, personally appeared _____
Michael L. Moskowitz , personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf
of which the individual(s) acted, executed the instrument.

_____              MICHAEL A. GILBERT
Signature and Office of Individual taking acknowledgement     Notary Public, State of New York
                                                No. 01GI6045945
                            OR                Qualified in Richmond County
                                           Commission Expires August 7, 20__

### UNIFORM, ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
(Outside of New York State)

State, District of Columbia, Territory, Possession or Foreign Country
_____ ) ss.:

On the ___ day of _____ in the year _____ before me, the undersigned, personally appeared _____
_____ personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf
of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned
in the _____
(Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
Signature and Office of Individual taking acknowledgement
New York Assignment of Mortgage
Page 1 of 1

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2005030300406001001E4FD2

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2005030300406001 | Document Date: 01-14-2005 | Preparation Date: 03-03-2005 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| PORT ABSTRACT INC<br>600 OLD COUNTRY ROAD-SUITE LL15<br>GARDEN CITY, NY  11530<br>516-227-1159<br>PORTABSTRACT@MSN.COM | M.L. MOSKOWITZ & CO., INC. D/B/A EQUITY<br>NOW<br>1370 AVENUE OF THE AMERICAS<br>NEW YORK, NY  10019 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 8541 | 26 | Entire Lot | | 2135 COLEMAN STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN: 2003000484623
x  Additional  Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| OPTION ONE MORTGAGE CORPORATION<br>6501 IRVINE CENTER DRIVE<br>IRVINE, CA  92618 | M.L. MOSKOWITZ & CO., INC.<br>1370 AVENUE OF THE AMERICAS, 6TH FLOOR<br>NEW YORK, NY  10019 |

x  Additional  Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | |
|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | |
| Taxable Mortgage Amount: | $ | 0.00 | |
| Exemption: | | | |
| TAXES:  County (Basic): | $ | 0.00 | |
| City (Additional): | $ | 0.00 | |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional  MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |

Recording Fee: $          47.00
Affidavit Fee:  $            0.00

NYC Real Property Transfer Tax Filing Fee:
$          0.00

NYS Real Estate Transfer Tax:
$          0.00

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        03-10-2005 14:32
City Register File No.(CRFN):
2005000142443

*Annette M Hill*

*City Register Official Signature*